IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| V. ) | CASE NO.:  2:17-CR-047-AKK-TMP |
| ) | |
| KEVIN MITCHELL MALDONADO, ) | |
| ) | |
| Defendant. ) | |

DEFENDANT'S SENTENCING MEMORANDUM

"Hope rises like a phoenix from the ashes of shattered dreams."
S. A. Sachs

This case is about secrets and deception.  Kevin Maldonado secretly gained access to the email accounts and cloud storage accounts of numerous women.  Some he knew, but most he did not.  He deceived his victims into thinking their accounts had been hacked.  In reality he was the person doing the hacking.  Once he gained access to their accounts, he looked into their world and stole their most intimate and precious moments.  He stole their pictures and videos without their knowledge or consent for his own gratification.  Kevin Maldonado forever changed the lives of the women he silently shadowed.  If he could go back and change things, he would but he cannot undue what he has done.

Kevin Maldonado spent six (6) years in the United States Air Force working in power production where he provided power to remote and mobile sites.  Following his honorable discharge, he continued working in the power production industry.  He spent eight (8) years working for Intelligent Switchgears providing power production solutions for hospitals and other major companies around the world.  Mr. Maldonado traveled extensively for work, spent months at a time away from his home, often alone for long stretches of time.  He became withdrawn,

1

reclusive and depressed. He began searching the darkness to satisfy his curiosity and ultimately drifted into voyeuristic behavior. The current charges are the end result of his conduct.

This case is also about revelations and rebirth. Once confronted by the possibility of criminal charges, Mr. Maldonado began the process of looking deep within himself to determine the why his behavior strayed from what is expected of upstanding members of society. Once confronted, Mr. Maldonado didn't like the person he saw reflected in the mirror. In an effort to change the person he had become, he began to seek professional help in the form of a psychologist. Kevin began having regular sessions with Dr. Angie McMullen, a licensed psychologist. During those meeting, Mr. Maldonado learned to identify the causes of his behavior. He became aware of the anxiety and depression he had been living with. He learned coping mechanisms to deal with the stress caused by his employment and the long hours he spent alone.

Kevin Maldonado has chosen to confront his inner demons and chart a new path. He has left his job with Intelligent Switchgears and the substantial salary he was receiving. He has reached out to his family and reunited with both his mother and father who he had not seen in years. He sold his house in Jefferson County and moved to Wilmington, North Carolina where he now lives with his mother. He has enrolled in Cape Fear Community College and hopes to one day receive a degree that will allow him to once again become a contributing member of society. He has also reconnected with a former childhood sweetheart, Dulcie Huskins, who is willing to support him during this time of great change. Kevin Maldonado has surrounded himself with people that love and care about him and has begun the process of building healthy relationships that will grow and mature with him into the future.

Kevin Maldonado's conduct is reprehensible and continues to be painful for the victims of his offense. He deeply regrets his actions and is sorry for the pain and humiliation he has caused. There are no excuses for Mr. Maldonado's conduct and he does not attempt to offer any here. The contents of this sentencing memorandum are intended to provide the Court with much needed context, to explain his frame of mind during those dark nights, and to explain the extraordinary steps he has taken to prevent this conduct from ever happening again.

This Court is well aware of the factors enumerated in 18 U.S.C. 3553(a) and the numerous legal opinions that give this Court the discretion to impose a sentence that is sufficient but not greater than necessary to fulfill the needs of sentencing in this case. The advisory sentencing guidelines result in a range of 0-6 months in Zone A of the sentencing table. Section 5B1.1(a) of the U.S. Sentencing Guidelines Manual authorizes the imposition of a sentence of probation for Mr. Maldonado's conviction of a Class D felony. Probation is not prohibited by statute, nor is Mr. Maldonado being sentenced to a term of imprisonment for another offense at this time. The government has requested a sentence at the high end of the advisory guidelines range, a sentence of six (6) months to serve in the Bureau of Prisons.

Kevin Maldonado hopes this memorandum will aid the Court in making a determination of an appropriate sentence - a sentence sufficient but not more than necessary to achieve the ends of justice. Mr. Maldonado was spinning out of control at the time he committed the offense conduct. However, he has come to terms with his depression and anxiety and fully accepts responsibility for his conduct and the pain that it has caused to the numerous victims of this offense.

After discussion, it will be respectfully submitted that the appropriate punishment in this case is a sentence of probation with terms and conditions that includes continuation of the mental

health treatment and counseling currently being received by Mr. Maldonado in Wilmington, North Carolina.  The Court should also consider the terms and conditions recommended by the Government in the plea agreement filed in this matter and agreed upon by the parties.  Such a sentence would promote respect for the law, provide adequate deference, protect the public and afford much needed counseling services in the most effective manner.  Any further punishment, we respectfully submit, would be more than necessary to achieve the ends of justice and reflect the offense.

### I.     KEVIN MITCHELL MALDONADO

Kevin Maldonado stands before this Honorable Court prepared to accept the sentence that most appropriately fulfills the requirements of 18 U.S.C. 3553(a).

Mr. Maldonado will be thirty-five (35) years old when he appears before the Court on May 17, 2017 for the imposition of sentence.  Mr. Maldonado has never been married and has no children.  He was born on August 1, 1985 and raised in the Newbern, North Carolina area.  Mr. Maldonado's mother, Barbara Smith, and father, Wilman Maldonado, divorced when he was approximately four (4) years of age.  Mr. Maldonado is an only child and was raised in a loving and supportive home by his mother.

Mr. Maldonado graduated from Rome High School (Rome, Georgia) in May 2000 and joined the U.S. Air Force in October 2000.  Kevin was honorable discharged in October 2006 as a Staff Sergeant.  He worked in power production and was stationed in various locations in the United States, Qatar, and Italy during his service.  Kevin received numerous commendations and awards during his military career detailed in the pre-sentence investigation report.

Following his honorable discharge, Kevin continued his work in power production when he took a job with Readiness Management Services in Doha, Qatar.  Mr. Maldonado worked as a

civilian contractor on a military base until October 2008, when he returned to the United States. He then went to work for Intelligence Switchgear Corporation out of Atlanta, Georgia. Kevin was employed as a field engineer and was responsible for installing and monitoring power production facilities in major metropolitan and remote area around the globe.

Mr. Maldonado voluntarily resigned him employment with Intelligence Switchgear in November 2016 to work on his personal relationships with his family and friends. He also believed it was necessary to his mental health and future well-being. He has since relocated to Wilmington, North Carolina where he lives with his mother and attends college at Cape Fear Community College.

## II.    SENTENCING CONSIDERATIONS

Attached hereto are letters from Kevin Maldonado, his mother, Barbara Maldonado Smith, and his girlfriend Dulcie Huskins. (Attached as Exhibit A) Additionally, attached here to are letters from Dr. Jeanne M. McAllister, Ph.D. and Dr. Angie McMullan, Ph.D., Mr. Maldonado's treating psychologists. (Attached as Exhibit B)

**From the letter by Kevin Maldonado:**

> "I am writing today to request leniency. I know there are those who would feel that I do not deserve any, but I would like to say that they do not know the steps I have taken to improve. I regret the hurt I caused the innocent. I know now what I did was wrong and it was a horrible mistake that I cannot take back. I am trying my best in every way I can to become a better person and to prove it to myself, my loving parents, the people I have wronged, and everyone else who still wishes the best for me. If given another chance, I would make them proud of me.
>
> I have recognized that my behavior in the past has been nothing short of reprehensive. The mindset I had at the time was altered. I have since been in therapy and learned that I was suffering from depression during the time frame of the incident. I have since cut all ties with that type of behavior and thinking. During these last 23 months, I have begun searching my soul, in quiet moments, for answers; I have not been in a state of suspended animation, and I have actively changed factors that were a huge contributor to the behavior being addressed. I have been under the care of two different psychologists, one in Birmingham and

one in my current city. I resigned from the job that required continuous travel which eventually led to depression and isolation; I had been with that job since 2008. The therapy sessions further reassured me that I am very much a people person and isolation was horrible for me. I have enrolled in college to further my education and eventually land me a good paying non-traveling job when I graduate. Also, quitting my job allowed me much needed time to reconnect with family members. Being in a high demand job made me forget what was important in life. I have realized that family and love is what makes my world go around. Finally, the last but most important item is that I have relocated and now I have my mom living with me. I have placed myself in a healthy environment and will not lose focus again.

I am thankful to you for reading my letter, and grateful for any consideration you may give to my request for leniency. I have begun a self-motivated path to a healthy state of mind. I beg you, please allow me to continue a non-interrupted journey."

### From the letter of Barbara Maldonado Smith, Mother of Kevin Maldonado:

"I am writing to you on behalf of Kevin Maldonado, who is due to appear before you on May 17, 2017, for sentencing. Although I do not know the intricacies of the case, I am fully aware of the charge. My name is Barbara Maldonado-Smith and I am Kevin Maldonado's mother.

As a single parent, I raised my son by myself; he made it easy . . . he was focused and goal oriented. Kevin was a good student in school, distinguished himself in the Air Force, and excelled at his job. His job required an extraordinary amount of travel and he worked extremely long hours; therefore, he was isolated from friends and family . . . causing depression. As a result, Kevin displayed a behavior pattern that was completely out of character for him.

Kevin has become extremely proactive in rehabilitating himself. He is getting professional help for his depression, quit his job and is now attending college, reconnected with his family, and developed a circle of friends. In the past, Kevin always made certain I was provided for; now I am living with him.

Kevin is a good man and is a worthy member of society. Hopefully, you will take my words into consideration and grant him leniency and mercy.

I plan on attending the sentencing and am prepared to make a brief statement at that time, if allowed."

### From the letter of Dulcie Huskins, friend of Kevin Maldonado:

My name is Dulcie Huskins and I have been a family friend for 35 years.

Kevin is, and always has been, a good man who hit a low point in his life and got lost for a little bit. He has since improved his life and surrounded himself with family and supportive friends. He has moved to a different city where he is attending college; his goal is to earn a Bachelor's Degree. Also, he sought professional help, which he is now receiving. His outlook on life has changed drastically.

Since I am unable to attend the sentencing and speak on his behalf, I am asking you to consider the above when, hopefully, reaching a lenient sentence. I believe him to be worthy of clemency.

**From the letter of Angie McMullan, Ph.D, Licensed Psychologist for Kevin Maldonado:**

Mr. Maldonado sought psychological assessment and treatment (6/17/2016-3/21/17), including nine office sessions while living.in Birmingham, and one phone consultation after moving to North Carolina, to address strategies for managing stress and symptoms of anxiety and depression. His diagnosis when working with me was Adjustment Disorder with Mixed Anxiety and Depressed Mood. He is motivated to develop effective coping skills and has progressed well.

Mr. Maldonado has made the following changes in his life to eliminate depression and isolation:

1. Resigned from a job that required continuous travel and social isolation.
2. Reconnected with family members that he had not seen in a long time.
3. Moved with his mother to North Carolina. Mr. Maldonado's mother is a strong source of emotional support.
4. Resumed a healthy and loving relationship with his girlfriend who is a childhood friend.
5. Enrolled in school with the goal of getting a good paying job that does not require travel.
6. Sought treatment with me in Birmingham.
7. After moving to Wilmington, sought treatment with a psychologist there.

I believe Mr. Maldonado has benefitted from his therapy, is dedicated to maintaining a new lifestyle that includes a strong social support network, and his prognosis is good.

**From the letter of Jeanne M. McAllister, Ph.D, Licensed Psychologist for Kevin Maldonado:**

I have seen Mr. Maldonado on two occasions, 04/04/17 and 04/25/17. Mr. Maldonado was given a diagnosis of Adjustment Disorder with Mixed Emotions of Anxiety and Depressed Mood (F43.23). Mr. Maldonado appeared very invested in treatment and in making changes that would make his life work better.

Prior to beginning his work with me, Mr. Maldonado reported having already made a significant number of positive changes in his life which include resigning from a job that required continuous travel and inhibited him from having a strong social support network. He reported he began working with a psychologist while still living in Birmingham, Alabama, and then began seeing me after relocating to Wilmington. He said he moved to Wilmington to be close to his mother and other family members and has established a healthy relationship with his girlfriend. He reported that he is enrolled in a local community college, Cape Fear Community College, where he plans on working on a degree that will allow him to have a job with a healthier lifestyle than his previous employment.

Mr. Maldonado appears to be making the changes that will improve the stability and satisfaction in his life and decrease the chances of his re-engaging in illegal behavior in the future.

### III.     18 U.S.C. 3553(a) FACTORS

The ultimate command of 18 U.S.C. 3553(a) is, after considering these factors, to impose a sentence that is "sufficient, but not greater than necessary", to comply with the purposes set forth in subsection (a) (2).  This is the so-called parsimony provision, which requires District Courts to *impose the minimum punishment needed to satisfy the purposes of sentencing*, being just punishment, deterrence, and protection of the public and rehabilitation of the defendant. Likewise, this requires the District Court to consider Mr. Maldonado and his sentence based on those unique factors which come into consideration in this particular case and involving this particular defendant.

We respectfully submit that the Court should consider those factors in the following way:

**A.     18 U.S.C. 3553(a)(1) - History and Characteristics**

For the majority of Kevin's life, he has been a conscientious and law abiding member of society. He has been employed in a full-time capacity in the military and then in a civilian capacity for most of his adult life. He graduated from high school in Georgia prior to enlisting in the U.S. Air Force where he worked in power production. During his military career, Kevin Maldonado received the following awards and commendations:

- Joint Service Commendation Medal
- Army Achievement Award
- Air Force Outstanding Unit Award
- Air Force Good Conduct Medal
- National Defense Service Award
- Afghanistan Campaign Medal
- Global War on Terrorism Service Medal
- Air Force Expeditionary Service Ribbon with Gold Border
- Air Force Overseas Long Tour Ribbon
- Professional Military Education Ribbon
- NATO Medal
- Air Force Achievement Medal
- Civil Engineering Badge

He was honorable discharged in 2006 with a rank of Staff Sergeant (E-5) at separation. After taking a year off, Mr. Maldonado began working as a civilian contractor on a military base in Qatar for Readiness Management Services. Kevin worked in power production, in a similar capacity to that when he was in the Air Force, until October 2008 when he returned to the United States. Following his return to the United States, Mr. Maldonado went to work for Intelligence Switchgears in Alpharetta, Georgia where he was employed as a Field Engineer for 2008 to 2016.

It was during his time with Intelligence Switchgears that Mr. Maldonado's behavior began to change. He spent long periods of time away from home, often in remote and unfamiliar locations. Significant periods of time were spent alone. Kevin's job often required him to work during the night when businesses were closed to avoid interrupting their employees and daily

9

operation. It was during those long hours at night that Mr. Maldonado got himself in trouble. It was during those long hours that he began phishing the email accounts of women that he knew in hopes of finding pictures. His behavior continued to regress until he was confronted by law enforcement.

Kevin Maldonado would later learn that his behavior was the result of anxiety and depression brought on by his inability to cope with the stressors in his life.

It is with deep regret that Kevin stands before this Court to await sentencing. Under 18 USC 3553(a) (1), the Court considers the history and characteristics of Kevin Maldonado. The relevant facts, in this regard, have been set forth in this memorandum, in the pre-sentence report, and in the letters from Kevin, his mother and girlfriend, as well as his treating psychologist. It is clear that Kevin is not a typical offender and he does not fit neatly into the "heartland" of cases that the United States Sentencing Commission used to determine the appropriate range of sentence for this type of offense.

### B.    18 U.S.C. 3553(a)(3) and (a)(4) - The Kinds of Sentences and Advisory Sentencing Guidelines Range

As to 3553(a)(3) and 3553(a)(4), the Court considers both the statutory range of punishment and the advisory guidelines calculations as correctly calculated by the United States Probation Office.

As the Court is aware, the statutory range of punishment in this case is imprisonment for a maximum term of five (5) years and a fine of not more than $250,000.00, or both.

The U.S. Probation Office has calculated the advisory sentencing guidelines in this matter and determined that U. S. Sentencing Guidelines, Section 2B1.1 is the proper guideline. The base offense level is 6 and there are adjustments of +2 for more than 10 victims and +2 for a conviction under 18 USC 1030 with the intent to obtain personal information. As a result, the

adjusted offense level is 10 and the total offense level, after a 2 level reduction for acceptance of responsibility is a level 8.  When combined with a criminal history category of Roman I it produces an advisory guidelines range of imprisonment of 0-6 months in Zone A of the Sentencing Table.

It is respectfully submitted that a sentence of probation with terms and conditions consistent with those listed in the plea agreement is more than sufficient to accomplish the statutory goals of sentencing set forth in 3553(a) for all the reasons discussed herein.

**C.     18 U.S.C. 3553(a)(2) - Punishment, Protection, and Treatment**

This section sets forth various purposes that the Court should seek to achieve through sentencing. The Court should bear in mind the statutory command that the Court should impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes listed in 3553(a) (2).

Subsection (a)(2)(A) speaks of the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.  One cannot merely take this factor as requiring that the sentence be of some particular severity because the crime was a serious one.

In this case, a sentence of probation with terms and conditions similar to those set forth in the plea agreement is more than sufficient to reflect the seriousness of the offense and to promote respect for the law.

Subsection (a)(2)(B) speaks of a sentence that is sufficient to adequately deter criminal conduct in the future.  It is also important in the same vein to realize that Kevin Maldonado's life has been significantly changed the events which lead him to this courtroom today.  If the Court

imposed the sentence requested in this memorandum, the impact of that sentence would be more than sufficient deterrence.

Subsection (a)(2)(C) speaks of a sentence sufficient to protect the public from further crimes of the defendant. At the current time, based on the steps undertaken since his arrest, including resigning from Intelligence Switchgears, entering into counseling, and relocating to be closer to family and his girlfriend, Kevin Maldonado does not pose a risk of danger to either himself, his family or to the public at large.

Kevin has been evaluated and assessed by two (2) separate psychologists.  He has been attending counseling sessions since June 2016 and continues to attend counseling sessions after relocating to Wilmington, North Carolina.

Both Dr. McMullan and Dr. McAllister believe Mr. Maldonado is making significant progress and currently does not pose a danger to himself, his family, or the public at large as long as he continues to engage in his current counseling and continues to pursue healthy relationships and lifestyle changes.

Subsection (a)(2)(D) speaks of the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  In this regard, there can be little question that the most effective manner of providing Kevin with needed educational or vocational training and medical care would be to permit him to continue down the road he is currently traveling.

In the end, these factors taken together with the substance of this memorandum should convince the Court that a probationary sentence of three (3) year with terms and conditions consistent with those outlined in the plea agreement is sufficient to meet the goals of 3553(a), but is not greater than necessary to achieve them.

### D.     18 U.S.C. 3553(a)(6) – The Need to Avoid Unwarranted Disparity

18 U.S.C. 3553(a)(6) directs the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." A term of probation as requested in this memorandum would be consistent with an advisory guidelines range of 0-6 months based on an offense level of 8 and a criminal history category of Roman I.

### E.     18 U.S.C. 3553(a)(7) Payment of Restitution

R.A.F. is seeking restitution in the amount of $1,655.27 as a result of Mr. Maldonado's conduct. Based on conversation with the U.S. Attorney's Office, Mr. Maldonado does not intent to contest this amount.

## IV.     PROBATION OFFICE RECOMMENDATION

The Probation Office has found "not identified any factors that would warrant a departure from the applicable sentencing guideline range." PSR at p. 20.

A sentence of probation is authorized under USSG, Section 5C1.1(a) based on a total offense level of 8 and a criminal history category of Roman I which results in a 0-6 month range of sentence in Zone A of the sentencing table. Kevin Maldonado simply seeks to receive a sentence that is "sufficient, but not greater than necessary" to meet the standards established by 3553(a).

## V.     CONCLUSION

Undersigned counsel submits that an appropriate sentence would be a sentence of probation for a term of three (3) year with terms and conditions consistent with those agreed to by the parties and set forth in the plea agreement enter in this case[1]. The resulting sentence would be appropriate under the circumstances of this case, would avoid an unnecessary sentencing disparity, and would substantially meet the needs of sentencing as pronounced in 18 U.S.C. 3553(a).

Respectfully submitted,

 /s/ Michael P. Hanle
MICHAEL P. HANLE

Of Counsel
Jaffe, Hanle, Whisonant & Knight, P.C.
2320 Arlington Avenue, South
Birmingham, Alabama 35205
Telephone:    (205) 930-9717
Email:        mhanle@rjaffelaw.com

CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of May, 2017, I electronically filed this Sentencing Memorandum and served a copy of same to Assistant United States Attorney, Erica Barnes, by filing same with the CM/ECF electronic filing system.

 /s/ Michael P. Hanle
MICHAEL P. HANLE

---

[1] The following conditions are contained in the plea agreement in this case. A term of probation for five (5) years with the following special conditions a. that the defendant participates in regular mental health treatment; b. that the defendant pay any restitution as determined by the court; c. that the defendant complete 250 hours of community service; d. that the defendant consent to random technology monitoring by probation; and e. that within ninety days of sentencing, the defendant prepares an apology letter to the Victims to be provided to the United States' Attorneys' Office for distribution.